ERIE CORPORATION *v.* WASHINGTON SQUARE RESTAURANT, INC.

[No. 1-474A54. Filed November 7, 1974.]

*William D. Powell, Frick, Powell & Miller,* of Evansville, for appellant.

*Jerry P. Baugh, Lacey, Terrell, Annakin, Heldt & Baugh,* of Evansville, for appellee.

LOWDERMILK, J.—Erie Corporation, plaintiff-appellant herein, operated the Washington Square Mall in Evansville. On September 1, 1964, appellant entered into a written lease agreement with Washington Square Restaurant, Inc., defendant-appellee herein. Paragraph number 2 of this lease pro-

vided that the rental for the premises should be in two parts—a "minimum guaranteed rental" of Thirteen Thousand Nine Hundred Seventy-six and 64/100 Dollars ($13,976.64) per year, payable at the rate of One Thousand One Hundred Sixty-four and 72/100 Dollars ($1,164.72) per month, in advance, on the first day of each month, with an "additional rental" being payable at Seven and one-fourth per cent (7¼%) of the gross sales of the lessee, appellee herein, in excess of Forty-eight Thousand One Hundred Ninety-five and 00/100 Dollars ($48,195.00) per quarter. Paragraph 43 of the lease gave to appellee-lessee an option to extend the term of the original five (5) year lease for an additional five (5) year term.

Four (4) riders were executed contemporaneously with the lease. However, Rider No. 1 is the only rider material to this litigation and will be the only rider discussed herein. This Rider No. 1 created an additional right in the landlord to cancel the lease, if, during any of the five (5) specified years (not the same five (5) years as the basic term of the lease) the gross sales of the lessee should be less than certain specified figures. The lessee was given the power to void such termination by the lessor in any given year by paying to lessor additional rental as if its gross sales had equalled the amount stipulated.

The last or fifth (5th) year specified in Rider No. 1 (calendar year 1969) included four (4) months of the extension term, in the event that the lessee chose to extend the term in accordance with the lease.

The lessee, in accordance with its option, extended the term of its lease for an additional five (5) years from September 1, 1969, through August 31, 1974. On July 1, 1968, the parties hereto entered into a further written agreement entitled "Amendment to Lease Agreement" which amended Rider No. 1, by providing for a different specified amount of "gross sales" and "annual rental" for the calendar year 1968, while leaving the amounts unchanged for the other four (4) calen-

dar years. The amendment stated that in all other respects the "Rider" and "Lease Agreement" shall remain unchanged.

Appellant filed its action for rent and possession of real estate, wherein it alleged defendant-appellee payed a rental for the calendar year 1970 of Fifteen Thousand Three Hundred Ninety and 16/100 Dollars ($15,390.16) and there was due and owing as rental for such period to plaintiff the further sum of Five Thousand Six Hundred Thirty-four and 94/100 Dollars ($5,634.94). Relief was prayed for in that amount, together with immediate possession of the property.

The question raised by the appellant was what rental was the lessee required to pay for the year 1970, that being the first year after the expiration of Rider No. 1. The lessee maintained, and the trial court found, that the rental due the lessor (appellant) for the year 1970 was in the amount of Thirteen Thousand Nine Hundred Seventy-six and 64/100 Dollars ($13,976.64) minimum guaranteed rental, plus Seven and one-fourth per cent (7¼%) of the gross sales of the lessee in excess of Forty-eight Thousand One Hundred Ninety-five and 00/100 Dollars ($48,195.00) per quarter as additional rental, in accordance with the express terminology of paragraph 2 of the lease. The lessor-appellant urges that the express language of the lease agreement does not control and that the lessee-appellee, during 1970, and subsequent years of the extended term, was required to pay some other rental, pursuant to the "Amendment of Lease Agreement" which it contends was, in part, oral.

Defendant-appellee filed motion for summary judgment which was followed by filing its interrogatories to be answered by plaintiff-appellant and the pertinent interrogatories, with appellant's answers thereto being as follows, to-wit:

"Question No. 1. It is alleged in plaintiff's complaint that 'it was agreed by and between the parties hereto that the minimum rentals to be paid by the defendant to the plaintiff for the calendar year subsequent to December 31, 1969, during the additional term would be gross

rentals of Twenty-one Thousand Twenty-five Dollars ($21,025.).' With respect to said allegation, please state whether or not said alleged agreement was oral or in writing.

Answer No. 1. Said agreement was both in writing and verbal.

Question No. 2(a). If the alleged agreement was oral, please state:

(a) The date of said alleged agreement.

Answer No. 2(a). The written agreements are dated September 1, 1964, and July 1, 1968. The verbal agreement was on or immediately prior to July 1, 1968.

Question No. 2(b). If the alleged agreement was oral, please state:

(b) The specific parties to said alleged agreement.

Answer No. 2(b). The parties to the agreement were Erie Investments, Inc., the plaintiff and Washington Square Restaurant, Inc., the defendant.

Question No. 2(c). If the alleged agreement was oral, please state:

(c) The plaintiff's understanding of said alleged agreement.

Answer No. 2(c). The plaintiff's understanding of said alleged agreement concerning which there is a dispute was that the minimum rentals applicable during the fifth (5th) calendar year ending December 31, 1969, would be applicable and payable by the Lessee to the Lessor during the extended term of the lease if any."

This was followed by the affidavit of Clarence E. Bugg, Jr., president of the defendant-appellee corporation, attached to the motion for summary judgment as follows:

"3. That at no time prior to July 1, 1968, was there any conference between your affiant and any representative of Erie Investments, Inc., in any way pertaining to the modification of any written instrument pertaining to the rental payment.

4. It is your affiant's understanding from the terms of the Lease Agreement and all riders and amendments in question in this matter that rental payments subsequent to December 31, 1969, are governed by the terms

of the Lease Agreement entered into September 1, 1964, specifically Section 2 thereof."

The trial judge handed down his findings of fact and conclusions of law thereon, in which he found, *inter alia,* "That the Lease Agreement and Amendment to Lease Agreement solely govern the terms of rental payments owing from defendant to plaintiff and any alleged oral 'understanding' or 'agreement' is null and void." Conclusions of law thereon determined that the terms of the lease agreement, attachments thereto, and the amendment to the lease agreement are clear and unambiguous and subject to a valid interpretation using the words used therein in their ordinary meaning, and that the terms of Rider No. 1 as attached to the original lease as amended July 1, 1968, apply to rents due and owing of the defendant to the plaintiff for the calendar years 1965 through 1969 only and that any rental for all subsequent years are governed solely by the terms of paragraph 2 of the lease agreement.

The court further concluded the law was with the defendant as to the complaint and that the pleadings, together with all attachments present no issue as to any material fact in the pending cause of action and therefore judgment should be entered for the defendant. Judgment was duly entered accordingly.

The sole issue presented here is whether the trial court properly granted summary judgment.

Appellant contends that the answers to interrogatories and the affidavit of the president of the appellee corporation, as heretofore set out in this opinion, established clearly that a dispute exists as to the material facts, the same being whether or not there were any understandings other than as shown by the documents of the rentals to be paid during the extended lease term.

Appellant, in effect, requests this court to make appellant's alleged oral agreement controlling as to the amount of rent

payable to appellant during the extended term of the lease. It is elementary that the terms of a written contract can not be altered by prior or contemporaneous parol evidence.

However, such is not the rule with regard to oral agreements entered into subsequent to the execution of the written agreement.

*Blenke Brothers Co.* v. *Ford Motor Company* (1963), 217 F.Supp. 459, at p. 463, holds:

". . . It is also true, however, that the parol evidence rule does not preclude a showing of oral agreements varying the terms of a prior integrated agreement where the oral agreements have been entered into subsequent to the writing. Thus, insofar as the plaintiff may be able to show any such other agreements within the confines of the parol evidence rule a genuine issue of fact exists with the result that there can be no summary judgment granted for either party on the defense of release."

See also, *American United Life Insurance Co.* v. *Peffley* (1973), 158 Ind. App. 29, 301 N.E.2d 651.

In the case at bar the answers to the interrogatories were that the verbal agreement between the parties was on or immediately prior to July 1, 1968.

The question presented by the answers to the interrogatories, which is unanswered, is, in our opinion—was said alleged verbal agreement made (1) immediately prior to July 1, 1968; (2) was it made on July 1, 1968, and (3) if it were made on July 1, 1968, was it made before the Amendment to Lease Agreement was reduced to writing on that date or was it made later on the date of July 1, 1968, after said Amendment to Lease Agreement was reduced to writing? If it were made after the Amendment to Lease Agreement was reduced to writing, then it became a subsequent and independent contract and, under *Blenke Brothers, supra,* appellant would not be precluded from showing the varying terms of a prior integrated agreement, namely, the Amendment to Lease Agrement.

In the case of *Houston* v. *First Fed. Savings & Loan Assoc.* (1969), 144 Ind. App. 304, 313, 246 N.E.2d 199, this court, in quoting from *Carter* v. *Williams,* (7th Cir. 1966), 361 F. 2d 189, 193, said:

" '. . . If, upon the proofs adduced in support of a motion for summary judgment, any doubt remains as to the existence of a genuine issue of material fact, such doubt must be resolved against the movant for summary judgment and the motion for summary judgment must be denied. . . . [Cases cited omitted.]' "

See also, *Tapp* v. *Haskins* (1974), 160 Ind. App. 117, 310 N.E.2d 288.

Although the trial court may have been of the opinion that the same result was reached in the granting of a summary judgment that would have been reached had he tried the case on its merits, he should have heard evidence and determined the case on its merits inasmuch as there was a triable issue of material fact presented to the court.

For the above reasons, this cause is reversed and remanded for proceedings not inconsistent with this opinion.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 318 N.E.2d 367.